## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **PRISCILLA PINEDA** | ) | |
| | ) | |
| **Plaintiff:** | ) | |
| | ) | |
| **vs.** | ) | **Case No.:** |
| | ) | |
| | ) | |
| **MARLOWE ELECTRIC, LLC** | ) | |
| **and JAMES WALTERS,** | ) | |
| **individually** | ) | **JURY DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW Plaintiff, Priscilla Pineda (hereinafter "Ms. Pineda" or "Plaintiff"), and files this action against Defendants, Marlowe Electric, LLC (hereinafter "Marlowe") and James Walters, Individually (hereinafter "Walters"), collectively referred to as "Defendants," and seeks to recover for Defendants' violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 et seq., 42 U.S.C. § 1981 for race discrimination, harassment, retaliation, and hostile work environment, as well as state law claims for breach of contract and unjust enrichment. Plaintiff hereby states and alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise under 29 U.S.C. § 216(b).

2.      Jurisdiction in this Court is proper as the claims are brought pursuant to the FLSA, as amended, 29 U.S.C. § 201, et seq., to recover unpaid overtime compensation, and additional equal amount as liquidated damages and reasonable attorneys' fees and costs.

3.      Defendants are subject to personal jurisdiction in this district as it regularly does business in the State of Alabama through its business including the one where Plaintiff was employed. At all times relevant to this case, Defendants were and have been an enterprise engaged in commerce as defined by §203(s)(1) of the Act.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since all, or at least a substantial part of the events giving rise to Plaintiff's claims, occurred in and around Marengo County, Alabama.

5.      This suit is authorized and instituted pursuant to 42 U.S.C. §1981 (Section 1981).  The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §§1331, 1334(4), 2201 and 2202. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by Civil Rights Act of 1991 as amended and 42 U.S.C. §1981 et seq. providing for

injunctive and other relief against race discrimination and retaliation in employment.

## PARTIES

6.      Plaintiff, Priscilla Pineda, is over the age of 19 and is a resident of Marengo County, in Linden, Alabama.

7.      Plaintiff Pineda is a Cuban-American/Latino citizen.

8.      At all relevant times, Defendants employed Plaintiff as its hourly employee from March 2019 through December 2019.

9.      Defendant, Marlowe, is an Alabama Limited Liability Company that operates and conducts business in and around Marengo County, Alabama. It is located at 19691 Highway 28, Linden, Alabama 36748.

10.      Defendant, James Walters, is an individual who, upon information and belief, lives and resides in the State of Alabama, and conducts business in Marengo County, Alabama.

11.      At all times relevant to this action, Walters was and is an individual resident of the State of Alabama, who owns and operates Marlowe, and who regularly exercises the authority to: (a) hire and fire employees of Marlowe; (b) determines the work schedules for the employees of Marlowe; and (c) controls the finances and operations of Marlowe; and, by virtue of having regularly exercised that authority on behalf of Marlowe, Walters is an employer as defined by 29 U.S.C. §201, et seq.

12.     At all material times hereto, Plaintiff was employed by Defendants in Marengo County, Alabama, from March 2019 until December 20, 2019.

## FACTUAL ALLEGATIONS

13.     Defendants are a privately owned electrical service and repair company headquartered in Marengo County, Alabama.

14.     Defendants provide electrical installation and repair services for public and private customers.

15.     Defendants earned at or above Five Hundred Thousand and 00/100 Dollars ($500,000.00) in annual gross sales or business during the relevant time period subject to Plaintiff's Complaint.

16.     Defendant James Walters is a Caucasian Male who owns, controls, and is the managing member of Defendant Marlowe Electric, LLC.

17.     Plaintiff, Priscilla Pineda, is a Cuban-American/Latino female.

18.     Plaintiff worked for Defendants from approximately March, 2019 to December 20, 2019.

19.     From March 2019 through December 20, 2019, Defendants Marlowe Electric and Walters subjected Ms. Pineda to disparate treatment due to her race and they failed to pay her for all the hours she suffered or was permitted to work for Defendants.

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

20.    This action is brought pursuant to the FLSA, 29 U.S.C. §201 et seq. and specifically for equitable and injunctive relief and to remedy violations of the wage provisions of the FLSA by Defendants which  deprived Plaintiff of her lawful wages.

21.    This action is brought to recover unpaid compensation owed to Plaintiff pursuant to the FLSA. Defendants have had a uniform policy and practice of consistently requiring its non-exempt employees to work over forty (40) hours per week for a flat salary amount without overtime compensation.

22.    This action is also brought to recover unpaid compensation owed to Plaintiff due to the Defendants' breach of contract.  The Defendants entered an oral contract with the Plaintiff for website development and the development of an employee handbook outside the scope of her employment as a dispatcher for the Defendants whose primary duties were to answer calls and dispatch technicians in response to said calls.

23.    At all material times hereto (March, 2019 to December 20, 2019), Plaintiff was an "employee" within the meaning of the FLSA.

24.    At all material times hereto (March, 2019 to December 20, 2019), Defendants were the "employer" as defined by Section 203(d) of the FLSA.

25.    At all material times hereto (March, 2019 to December 20, 2019),

Plaintiff was "engaged in commerce" within the meaning of §6 and §7 of the FLSA.

26.     At all material times hereto (March, 2019 to December 20, 2019), Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA.

27.     At all relevant times stated herein, Defendants were an enterprise covered by the FLSA, and as defined by 29 U.S.C. §§ 203(r) and 203(s).

28.     At all material times, Defendants employed two (2) or more employees engaged in interstate commerce and that said enterprise has had two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person such as office supplies, building maintenance supplies, tools and equipment, etc.

29.     At all material times stated herein, Plaintiff was "engaged in commerce" and subject to individual coverage under the FLSA in that she:

a.     Operated instrumentalities of commerce;

b.     Transported goods in commerce;

c.     Used channels of commerce;

d.     Communicated across state lines; and/or

e.     Performed work essential to any of the preceding activities.

30.     At all material times hereto (March, 2019 to December 20, 2019), the

work performed by Plaintiff was directly essential to the operations performed by Defendants and Defendants' strategy.

31.     Plaintiff was paid a flat hourly rate. Plaintiff was not paid any overtime compensation or on-call compensation despite the fact that she worked well over the required forty (40) hours a week to entitle her to overtime pay at time and one-half for all hours worked over forty (40) hours each week. Plaintiff routinely worked through lunch and, regardless if she took a lunch, Defendants docked forty-five (45) minutes of her pay every workday.

32.     Plaintiff and Defendants entered into an oral contract for the Plaintiff to provide website development services and to draft the employee handbook for Defendant, Marlowe.  This is outside the scope of her normal duties to answer calls and dispatch technicians.   The Plaintiff was never compensated for her services pursuant to the contract between the parties.

33.     At all material times hereto (March, 2019 to December 20, 2019), Defendants intentionally failed and/or refused to pay Plaintiff according to the provisions of the FLSA.

34.     In doing so, Defendants failed to make a good faith effort to comply with FLSA and 29 U.S.C. §§ 201-209, because Plaintiff performed services for Defendants for which no provisions were made by Defendants to properly pay Plaintiff for those

hours worked in excess of forty (40) within a work week.

35.   Plaintiff was closely monitored and supervised by Defendants Marlowe and Walters.

36.   Defendants' computer system was connected to their main office in "real time," so Plaintiff's supervisor and other Marlowe executives could monitor activities for the operation as they were occurring.

37.   Plaintiff was paid on an hourly basis and her regular rate of pay was twelve dollars ($12.00) per hour.

38.   Plaintiff was required to report to her position by using Defendants' timekeeping computer system.

39.   Defendants purported to classify Plaintiff as an exempt employee for FLSA purposes.

40.   Plaintiff routinely worked over forty (40) hours in a given workweek; however, she was not compensated at a rate of time and one-half for those overtime work hours.

41.   Defendants had actual or constructive knowledge of Plaintiff's on-the-clock activities.

42.   Defendants had actual or constructive knowledge of Plaintiff's off-the-clock activities.

43.     Under Defendants' methods of recording time, Plaintiff was paid her hourly flat rate for every hour worked and, as a result, was not compensated time and one half for all hours worked over forty (40) in a workweek.

44.     Upon information and belief, Plaintiff, Priscilla Pineda, typically worked approximately fifty (50) hours per week.  This includes approximately ten (10) hours of overtime each workweek.

45.     Rather than pay Plaintiff overtime compensation at a rate of time and one-half for her overtime work hours, Defendants implemented and maintained a policy whereby they only paid Plaintiff her regular rate of pay for all hours worked in a given workweek.

46.     Plaintiff was not fully compensated for hours worked over forty (40) in a given workweek.

47.     As such, Plaintiff is owed half-time back pay for all of her overtime hours, as well as payment for website development and drafting the employee handbook which she was employed to do outside her regular duties as a dispatcher.

48.     Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiff.

49.     Defendants knowingly and willfully failed to fulfill their record keeping

9

requirements with regard to Plaintiff under 29 C.F.R. 516.

50.     Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern or practice of failing to pay Plaintiff for the work she performed as an author and web developer. On average, Plaintiff worked over 40 hours per week for Defendants' operations.

51.     Plaintiff performed her job duties at Defendants' main location and at her house.

52.     Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, et seq., (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

## BREACH OF CONTRACT AND UNJUST ENRICHMENT

53.     In addition to her normal job duties at Marlowe Electric, Defendants also employed Plaintiff to design, construct, and maintain their business website for the price of $600.00.

54.     Defendants never paid Plaintiff for the web development and maintenance services she performed on behalf of their operation.

55.     In addition to her normal job duties at Marlowe Electric, Defendants also employed Plaintiff to draft its employee handbook on her "off-time".

Defendants agreed to pay $400.00 for Plaintiff to draft the handbook.

56.    However, once the handbook was completed by Plaintiff and received by Defendants, Defendants refused to pay Plaintiff.

57.    Defendants were to pay Plaintiff on or before December 20, 2019 for the handbook and web services, but they breached their contract with Plaintiff by failing to pay.

### RACE DISCRIMINATION,  RETALATION, AND HOSTILE WORK ENVIRONMENT

58.    Plaintiff is a Cuban-American/Latino female.

59.    Plaintiff worked for Defendant as an hourly employee and she acted as the office clerk and dispatcher for Defendants' operation at its Marengo, Alabama, location.

60.    Throughout her employment, Plaintiff experienced racially charged harassment and was retaliated against for complaining about the racial harassment.

61.    Plaintiff's job duties and assignments were controlled by Marlowe Electric's managing member, James Walters.

62.    At all relevant times, Walters supervised Plaintiff.

63.    Walters routinely refused to call Plaintiff by her given name, instead addressing her as "girl," a term carrying known racially charged undertones.

64.    Current and former employees working for Defendant witnessed Walters calling Plaintiff racial slurs on multiple occasions.

65.    Plaintiff repeatedly informed Walters that he found the use of the term "girl" and "your people" when addressing her to be offensive and racially insensitive.

66.    Walters also called Plaintiff curse words and racial slurs in-front of customers.

67.    On or about the end of March 2019, Walters' comments became more common and hostile.

68.    Walters started making the following statements to Plaintiff: "you do what I say," "You are beneath me", "if you don't like it, there's the door".

69.    Plaintiff continued to inform Walters that his racially insensitive language was offensive. However, that did not deter Walters, who continued to use the language.

70.    On at least one occasion, Walters threatened to fire Plaintiff for complaining about the racial comments he made towards her.

71.    On at least one occasion, Walters threatened to fire Plaintiff for complaining about Walters and Marlowe's failure to pay Plaintiff for all the hours she suffered or was permitted to work for Defendants' operations.

72.    As the managing member of Marlowe Electric, Walters threatened Plaintiff for complaining about the racially insensitive comments.

73.    Plaintiff repeatedly informed other employees about the racially charged comments being made by Walters. However, nothing was done and instead Plaintiff was retaliated against by having her pay reduced.

74.    At all relevant times, Walters routinely informed Plaintiff that he carried a firearm (pistol) on his person.

75.    On several occasions when Plaintiff complained about not being compensated for her work and/or for being treated differently due to her race, Walters would brandish his firearm or place his hand upon the firearm implying that he was ready to draw it from his belt holster.

76.    Walters would either carry his pistol in a concealed fashion or openly on a belt holster.

77.    Plaintiff's last day working for Defendants was December 20, 2019.

78.    Before being terminated on December 20, 2019, Plaintiff submitted her final complaints of race discrimination and incorrect compensation to Walters. In response, Walters became dangerously hostile towards Plaintiff. Instead of responding to Plaintiff's complaints as Marlowe Electric's managing member, Walters proceeded to get in Plaintiff's personal space while simultaneously placing his hand on his firearm which was located in his belt holster. Plaintiff asked him to stop being hostile, but Walters never relented and instead he proceeded to start drawing the firearm out his belt holster while telling Plaintiff, "if you don't like it,

there is the door" (pointed towards the door). Fearing for her safety, Plaintiff exited Defendant's facility and was terminated on the spot by Walters, Marlowe Electric's managing member.

79.   After Plaintiff submitted her final complaints to Defendants, she was threatened with deadly force by Defendant Marlowe's manager and terminated. Defendants did not give any reason for Plaintiff's termination. Prior to being terminated, Plaintiff had performed her job duties as ordered and without issue.

80.   Based upon Plaintiff's information and belief, Defendants' white employees received unacceptable job performance scores and were not disciplined at all.

81.   Plaintiff had performed her job to the reasonable satisfaction of Defendants prior to her own complaints of racial harassment and retaliation; having received no complaints of unsatisfactory work performance.

82.   Management did not take proper steps to protect Plaintiff from her white supervisor's racial harassment in the workplace.

83.   Management did not take proper steps to protect Plaintiff from its hostile work environment, which contributed to Plaintiff's sense of unease.

84.   Management did not take proper steps to protect Plaintiff from retaliation in the workplace due to her race and the color of her skin.

14

85.   Plaintiff was terminated shortly after she issued her final complaint of race discrimination, racial harassment and retaliation, and incorrect pay.

86.   At all relevant times, Plaintiff engaged in a protected activity in opposition to Defendants' unlawful employment practices and Defendants' stated reasons for terminating Plaintiff were pretextual.

87.   At all relevant times mentioned herein, Defendants were aware of the requirements and protections set forth by 42 U.S.C. § 1981 and its requirements.

88.   At all relevant times, Defendants were aware of Plaintiff's wage and hour complaints, as well as her complaints of discrimination and requests for racial equality.

89.   Defendants knowingly, willingly, and/or recklessly denied Plaintiff her rights under the Fair Labor Standards Act and 42 U.S.C. § 1981, *et. seq*.

90.   As a proximate result of the illegal actions alleged above, Plaintiff has been damaged in that she has been caused to suffer great humiliation and mental anguish from then until now.

91.   Defendants acted intentionally to deprive Plaintiff of her rights as alleged in an attempt to cause Plaintiff mental anguish.

92.   Defendants acted intentionally to deprive Plaintiff of her rights under the Fair Labor Standards Act and 42 U.S.C. § 1981, *et. seq* by discriminating against her because of her race and because of her opposition to unlawful employment practices.

15

93.    As a result of Defendants' action and omissions, Plaintiff suffered and continues to suffer harm, including, but not limited to, loss of employment, denial of wages, denial of unpaid backpay, compensation, and other benefits and conditions of employment.

94.    Plaintiff suffers a continuing harm, including pain, humiliation, anxiety, embarrassment, mental anguish and suffering, and loss of enjoyment of life due to stress and ongoing anxiety from the threats and discrimination she endured.

**COUNT I**
**Violation of the Fair Labor Standards Act of 1938**
**29 U.S.C. §§ 201 *et. seq.***
**(Brought Against All Defendants)**

Plaintiff incorporates by reference the previous paragraphs 1-94 and makes thema part hereof.

95.    At all material times hereto, Plaintiff worked in excess of forty (40) hours per workweek for which Plaintiff was not compensated at the statutory rate of time and one-half Plaintiff's regular rate of pay.

96.    Plaintiff was, and is, entitled to be paid at the statutory rate of time and one-half Plaintiff's regular rate of pay for those hours worked in excess of forty (40) hours in a workweek.

97.    At all times material hereto, Defendants failed, and continue to fail, to maintain proper time records as mandated by the FLSA.

16

98.    Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA, as evidenced by its failure to compensate Plaintiff at the statutory rate of time and one-half of Plaintiff's regular rate of pay for the hours worked in excess of forty (40) hours per workweek when they knew, or should have known, such was, and is, due.

99.    Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

100.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages.

101.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

102.    At all times material hereto, Defendants failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4 with respect to Plaintiff by virtue of the management policy, plan or decision that intentionally provided for the compensation of such employees at a rate less than time and one-half for her overtime hours.

**COUNT II**
**Violations of 42 U.S.C. Section 1981**
**Race Discrimination, Harassment, and Retaliation**
**(Brought Against All Defendants)**

17

The Plaintiff re-alleges and incorporates by reference paragraphs (1-102) with the same force and effect as if fully set out in specific detail herein below.

103.   Plaintiff has been discriminated against in discharge, promotions, and other terms and conditions of employment, including being penalized on performance evaluations because she complained about the race discrimination she was forced to endure.

104.   Plaintiff began her employment with the Defendants as a general manager and assistant during the month of March, 2019.

105.   Shortly after starting her job in March 2019,  Defendants started making discriminatory comments towards Plaintiff about her race, color, and national origin. Plaintiff immediately complained to Defendants about the racial harassment and discrimination.

106.   Defendants do not have a legitimate, non-discriminatory reason for its pay reduction and demotion decisions.

107.   Defendants' reasons are pretext for race discrimination.

108.   Defendants subjected Plaintiff to intentional discrimination based on the fact of her race.

109.   Defendants terminated Plaintiff on or about December 20, 2019 after she had submitted multiple complaints to Defendants' management staff and race

discrimination, intentional discriminatory treatment concerning her race, retaliation for complaining about the discriminatory treatment she was forced to endure, and his non-selection.

110.   Defendants do not have a legitimate, non-discriminatory reason for Plaintiff's termination.

111.   Despite the fact that Plaintiff's performance was above average, Defendants cited an alleged lack of performance for Plaintiff's termination reason.

112.   Defendants' decision to discharge Plaintiff was pretext for race discrimination.

113.   Defendants have a pattern and practice of discriminating against Cuban-American/Latino employees in promotions, evaluations, job staff support, termination, and other terms and conditions of employment.

114.   Because of such conduct, Plaintiff has suffered severe emotional distress, embarrassment and humiliation.

115.   Defendants' actions were willful, with malice and with reckless disregard.

116.   Plaintiff seeks to redress the wrongs alleged herein and this suit is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful policies and practices as set

19

forth herein unless enjoined by this Court.

## COUNT III
## Violations of 42 U.S.C. Section 1981
## HOSTILE WORK ENVIRONMENT
### (Brought Against All Defendants)

Plaintiff adopts and realleges the allegations of paragraphs (1-116) as if fully set forth herein.

117.    Defendants subjected Plaintiff to a racially hostile work environment in violation of 42 U.S.C. § 1981, by failing to address her concerns regarding unequal pay practices, failing to adequately train and prevent racial slurs and racially driven stereotypes.

118.    While employed with Defendants, Plaintiff was subject to racial slurs, curse-words, and racially motivated stereotypes of  Cuban-American/Latino and Latino by saying "go pick up your people (Latinos) from Home Depot.

119.    Defendants did not implement a complaint process or training to prevent this racially hostile behavior that changed the terms and conditions of Plaintiff's employment.

120.    As a consequence of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

121.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorney's fees, costs, injunctive relief, and declaratory judgement is her only means of securing adequate relief.

122.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful practices set forth herein unless enjoined by this Court.

## COUNT III
## BREACH OF CONTRACT
### (Brought Against All Defendants)

 Plaintiff incorporates by reference the previous paragraphs (1-122) and makes them a part hereof.

123.    Plaintiff and Defendants entered an agreement for the Plaintiff to provide web development services and to draft the employee handbook for Defendant, Marlowe.

124.    Plaintiff performed the work, developing the website for the Defendants and completing the employee handbook for Defendant, Marlowe, prior to her termination of employment.

125.    The Defendants have intentionally failed and refused to compensate the Plaintiff for her services.

126.    The Plaintiff has incurred attorneys' fees and expenses due to the

Defendant's intentional failure and refusal to compensate the Plaintiff for the services she rendered to the Defendants.

## COUNT IV
## UNJUST ENRICHMENT
### (Brought against all Defendants)

Plaintiff incorporates by reference the previous paragraphs (1-127) and makes them a part hereof.

127.   The Plaintiff rendered services to the Defendants by developing Defendant Marlowe's website and drafting the employee handbook. These duties were outside the scope of her employment as a dispatcher.

128.   The Defendants have intentionally failed and refused to compensate the Plaintiff for the services she has rendered to the Defendants.

129.   The Plaintiff avers, upon belief and the information she has received, that the Defendants continue to reap the benefits of the Plaintiff's services as the Defendants are still using the website developed by the Plaintiff and the employee handbook drafted by the Plaintiff.

130.   The Defendants have and will continue to be unjustly enriched by the services of the Plaintiff should the Plaintiff not be compensated for her services rendered to the Defendants outside the scope of her duties as a dispatcher employed by the Defendants.

131.    The Plaintiff has incurred attorneys' fees and expenses due to the Defendant's intentional failure and refusal to compensate the Plaintiff for the services she rendered to the Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that judgment be entered in her favor against Defendants:

a.  Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

b.  Awarding Plaintiff overtime compensation in the amount due to her for Plaintiff's time worked in excess of forty (40) hours per workweek;

c.  Awarding Plaintiff backpay in accordance with the FLSA.

d.  Awarding Plaintiff liquidated damages in an amount equal to the overtime award;

e.  Issue a declaratory judgment that Defendants' employment policies, practices, procedures, conditions and customs of violative of the rights of the Plaintiff under 42 U.S.C. §1981.

f.  Grant Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at Defendants' request from continuing to violate 42 U.S.C. §1981.

g.  Awarding Plaintiff Compensatory Damages against Defendants for their violations of 42 U.S.C. §1981.

h.  Awarding Plaintiff Punitive Damages against Defendants for their retaliatory and hostile work environment violations of 42 U.S.C. §1981.

i.  Awarding Plaintiff damages against Defendants for Breach of Contract and Unjust Enrichment.

j.  Awarding Plaintiff reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

k.  Awarding Plaintiff pre-judgment interest;

l.  Ordering any other further relief the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Dated, this the 23rd, day of February**,** 2021.

RESPECTFULLY SUBMITTED,

s/ Daniel Patrick Evans
Daniel Patrick Evans
ASB-3209-R67G
Attorney for the Plaintiff
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone: (205) 870-1970
Fax: (205) 870-7763
E-Mail: dpevans@evanslawpc.com

**<u>Plaintiff's Address</u>**:

c/o The Evans Law Firm, P.C.

**<u>Defendants' Addresses:</u>**

**SERVE DEFENDANTS BY CERTIFIED MAIL:**

**Marlowe Electric, LLC**
19691 Hwy 28
Linden, Alabama 36748

**James Walters**
19691 Hwy 28
Linden, Alabama 36748